## BOARD OF ADJUSTMENT OF FAYETTEVILLE
### v. OSAGE OIL & TRANSPORTATION, INC.

75-25                               522 S.W. 2d 836

Opinion delivered May 12, 1975
[Rehearing denied June 16, 1975.]

*James U. McCord*, for appellant.

*Esther M. White*, for appellee.

GEORGE ROSE SMITH, Justice. This zoning case presents a question of constitutional law. The appellee, as the owner of a gasoline service station in Fayetteville, applied to the appellant Board of Adjustment for a variance that would permit the appellee to erect at its service station an advertising sign exceding in size the limit of 75 square feet fixed by the zoning ordinance. The Board unanimously denied the request. On appeal the circuit court reversed the Board's decision, holding that the 75-foot limitation is invalid on its face, in view of other provisions in the ordinance. Whether that holding is correct is the only question before us.

The ordinance contains extensive and detailed provisions governing a wide variety of signs that are permitted or prohibited in differing zoning districts. We need not set forth the numerous restrictions imposed by the ordinance, but we do stress the fact that the appellee is challenging a single provision in a very comprehensive zoning ordinance.

This controversy centers upon the city's distinction between a "business sign," which relates to goods or services available on the premises where the sign is situated, and an "outdoor-advertising sign," which relates to goods or services available elsewhere. Business signs are not to exceed 75 square feet in size, though there may be one on each face of a building. Outdoor-advertising signs cannot be more than 25 feet long or 12 feet high, so that a maximum area of 300 square feet is possible.

The basic power of a municipality to regulate the size and location of billboards and other commercial signs has been sustained in so many jurisdictions that it would be a waste of time and effort to cite the cases. Such regulations have been upheld upon many grounds, including the promotion of traffic safety, the control of potentially hazardous

structures, and the fundamental considerations of city planning and city beautification that underlie the zoning concept itself. We have sustained simple regulations affecting signs. *Seiz* v. *City of Hot Springs,* 194 Ark. 544, 108 S.W. 2d 897 (1937); *Berkau* v. *City of Little Rock,* 174 Ark. 1145, 298 S.W. 514 (1927).

Moreover, the particular distinction now before us, between on-site and off-site advertising signs, has almost invariably been held to be constitutional. In a recent case, *Cromwell* v. *Ferrier,* 19 N.Y. 2d 263, 279 N.Y.S. 2d 22 (1967), the Court of Appeals had this to say: ". . . petitioner argues that the legislative distinction between identification signs [on-site] and nonaccessory signs [off-site] is unreasonable and discriminatory. Neither *Bond* [a prior N.Y. case] nor any other decision of this court has dealt specifically with this point but numerous cases from other jurisdictions have had occasion to do so. In nearly all, zoning ordinances which have distinguished between accessory and nonaccessory signs have been upheld, providing that the distinctions were applied in a reasonable manner."

Perhaps the leading opinion upon the point is that of Justice Brennan in *United Advertising Corp.* v. *Borough of Raritan,* 11 N.J. 144, 93 A. 2d 362 (1952). There the controlling legislative measure prohibited all off-site signs and enacted many restrictions upon the size and location of on-site signs. The court upheld the law, pointing out that a business sign is in actuality part of the business itself, but an outdoor advertising sign lacks that characteristic and is therefore subject to different treatment.

It goes without saying that in the case at bar the ordinance is presumed to be constitutional and the burden of showing its invalidity is upon the appellee. *Rebsamen Motor Co.* v. *Phillips,* 226 Ark. 146, 289 S.W. 2d 170, 57 A.L.R. 2d 1256 (1956). The appellee offered no proof whatever to support its contention that the ordinance is unreasonably discriminatory. Our inquiry is thus limited to the face of the ordinance, with every presumption being in its favor.

It is argued that since the appellee's proposed sign

would advertise the service station, the appellee is therefore an advertiser and must be treated precisely the same as outdoor advertisers (who are permitted to erect signs as large as 300 square feet). This argument illustrates the fallacy in the appellee's position. The on-site business sign and the off-site outdoor billboard fall into different categories, are erected for different purposes, and are subject to different regulations. As Justice Brennan pointed out: "The business sign is in actuality a part of the business itself, just as the structure housing the business is a part of it, and the authority to conduct the business in a district carries with it the right to maintain a business sign on the premises subject to reasonable regulations in that regard as in the case of this ordinance." *United Advertising, supra.*

The outdoor advertising sign, on the other hand, is not maintainable as a matter of right; such signs have been prohibited altogether. See the extended discussion in *General Outdoor Adv. Co.* v. *Department of Public Works,* 289 Mass. 149, 193 N.E. 799 (1935). The controlling issue is not that of comparing the city's regulation of on-site signs with its regulation of off-site signs. Instead, the question is whether the 75-foot limitation upon business signs is unreasonable and arbitrary. The question is plainly one of fact, upon which the record is wholly and fatally devoid of proof.

A related argument is that since the appellee could buy a lot across the street from its service station and erect a 300-foot billboard there, it has a right to erect a similar sign upon the service station site. That argument was rejected in Justice Brennan's opinion and, inferentially, in the *Cromwell* case, where it was urged by the dissenting judges. The flaw in the argument lies in its disregard of the fundamental differences between on-site signs and off-site signs.

The trial court, in holding the restriction to be void on its face, declared that "the harm done by large signs is the same, regardless of who puts them up." The appellee makes a similar contention. We cannot agree with such a generalization, which would ultimately invalidate all billboard regulation. The purpose of the Fayetteville ordinance and similar legislation is obviously to reduce the number and size of

billboards and other signs, else there would be no point in the enactment. In case after case large signs have been excluded from residential districts, parks, recreation areas, highway frontages, and the like, without regard to "who put them up." As we have seen, the proprietor of an on-site business is subject to restrictions reasonably appropriate to his situation. Here there is no proof that the Fayetteville ordinance is an unreasonable or arbitrary measure. By contrast, the ordinance which was invalidated in *Sunad, Inc.* v. *City of Sarasota,* 122 So. 2d 611 (Fla., 1960), cited by the appellee, placed no limit whatever upon the size of on-site signs. The court rested its decision on esthetic considerations and on that basis found no reason to distinguish one large sign from another. That is not our basis for upholding the Fayetteville zoning restrictions.

Reversed.

BYRD, J., dissents.